IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 4:22-cv-00127 |
| v. | ) ) | |
| THOMAS R. MCLEAN, MD, and JEFFREY W. BRUCE, | ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now Comes State Farm Fire and Casualty Company ("State Farm"), by counsel, Heyl, Royster, Voelker & Allen, P.C., and pursuant to 28 U.S.C. § 2201, brings the following Complaint for Declaratory Judgment:

**Allegations Applicable to All Counts**

1. This Complaint for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201.

**I. This Court Has Subject Matter Jurisdiction Over This Complaint Pursuant To 28 U.S.C. § 1332(a).**

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this is a civil matter between citizens of different States and the amount in controversy exceeds $75,000.

3. There is complete diversity of citizenship between the parties.

    a. Plaintiff State Farm is an Illinois corporation with its principal place of business in Illinois.

b. On information and belief, Defendant Thomas R. McLean is domiciled in the state of Kansas, with his permanent address located in Shawnee, Kansas.

c. On information and belief, Defendant Jeffrey W. Bruce is domiciled in the state of Missouri, with his permanent address located in Belton, Missouri.

4. The amount in controversy exceeds $75,000.

a. As discussed in more detail below, this Complaint for Declaratory Judgment addresses whether a Personal Liability Umbrella Policy, bearing policy number 25-EH-4412-9, issued to Jeffrey W. Bruce (hereinafter the "Policy") provides coverage for an Amended Complaint filed against Jeffrey Bruce by Thomas R. McLean in the United States District Court for the Western District of Missouri, bearing case number 4:20-cv-593BP (hereinafter the "Underlying Complaint").

b. Coverage L of the Policy provided personal liability coverage in certain circumstances, subject to the terms and conditions of the Policy. (**Exhibit A** (Certified Policy Record) at pp. 11-14.)

c. Coverage L of the Policy had a limit of liability of $1,000,000. (**Exhibit A** at p. 2.)[1]

---

[1] Although not directly relevant to this Complaint for Declaratory Judgment, Coverage L of the Policy was also subject to the Policy's **MAINTAINING REQUIRED UNDERLYING INSURANCE** provisions. (**Exhibit A** at p. 10.) Thus, even if the Policy provided coverage for the Underlying Lawsuit (which it does not), because there is no **required underlying insurance** which would provide coverage to McLean's claims, the operation of the MAINTAINING REQUIRED UNDERLYING INSURANCE provisions would require Bruce to pay the first $100,000 of any judgment rendered against him. (**Exhibit A** at pp. 2, 10.)

d. The lawsuit filed against Bruce by Thomas R. McLean also expressly seeks in excess of $75,000. (**Exhibit B** (McLean's First Amended Complaint) at p. 1.)

e. Indeed, McLean filed "Affidavits on Damages" in the Underlying Lawsuit, where he claims that he is seeking damages in excess of $3.4 million. (**Exhibit C** (Affidavits of Damages) at pp. 2, 5.)

## II. Venue Is Appropriate In This Court Under 28 U.S.C. §1391.

5. Venue is appropriate in this Court.

6. Under 28 U.S.C. § 1391, venue is appropriate in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7. This Complaint concerns whether coverage exists under the Policy for the Underlying Complaint, which was filed in this District Court and is currently pending in this District Court.

8. As a consequence, a substantial part of the events or omissions giving rise to this Complaint for Declaratory Judgment occurred in this judicial district.

## III. Background Of The Terms Of The Policy At Issue

9. Coverage L of the Policy provided personal liability coverage in certain circumstances, subject to the terms and conditions of the Policy.

10. The insuring agreement of Coverage L of the Policy stated:

> If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured,** the damages that exceed the **retained limit.** The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the

declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

**Defense**

If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for suit is a **loss** that is not covered by any other insurance policy but is covered by this policy. **We** have no duty to defend any claim or suit after **we** tender, deposit in court, or pay the amount due under this policy.

(**Exhibit A** at p. 11.)

11. Coverage L was subject to several exclusions, including the following:

There is no coverage under this policy for any:

...

2. **loss** arising out of any **insured** providing or failing to provide a professional service;

...

6. **loss** arising out of any **insured's business property** or **business** pursuits of any **insured** ...

...

19. liability imposed on or assumed by any **insured** through any unwritten or written agreement.

(**Exhibit A** at pp. 12-14.)

12. The Policy also had the following definitions:

2. **"bodily injury"** means physical injury, sickness or disease to a person, including death resulting therefrom ... **Bodily injury** does not include: ... emotional distress, mental anguish, humiliation, mental distress, mental injury, or any

> similar injury or any resulting physical injury unless it arises out of actual physical injury to some person ...
>
> 3. **"business"** means a trade, profession or occupation, including farming.
>
> ...
>
> 7. "**loss**" means:
>
>     a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**;
>
>     b. the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss.**
>
> 8. "**personal injury**" means injury other than **bodily injury** arising out of one or more of the following offenses:
>
>     a. false arret, false imprisonment, wrongful eviction, wrongful detention of a person;
>
>     b. abuse of process, malicious prosecution;
>
>     c. libel, slander, defamation of character; or
>
>     d. invasion of a person's right of private occupancy by physically entering into that person's personal residence.
>
> ...
>
> 10. "**property damage**" means physical damage to or destruction of tangible property, including the loss of use of such property. Tangible property does not include computer programs or data or the reconstruction of computer programs or data. Theft or conversion of property by an **insured** is not **property damage.**

(**Exhibit A** at pp. 6-8.)

### IV. Background on the Underlying Lawsuit

13. On June 28, 2021, McLean filed the Underlying Complaint against Jeffrey Bruce. (**Exhibit B**.)

14. The Underlying Complaint contained the following assertions applicable to all Counts:

   a. McLean "was a staff surgeon at Eastern Kansas VA Healthcare System (EKVAHCS), Leavenworth, KS."

   b. In 2012, two months after McLean testified "that Deputy Chief of Staff, the Chief of Surgery and another surgeon (Dr. M) were causing actual harm to staff and veterans, the Deputy Chief of Staff (DCOS) chaired a secret *ex parte* Professional Standard Board (PSB) meeting to take evidence from the Chief of Surgery and Dr. M about my surgical competence. Not disclosed to the PSB was the fact that the DCOS and the two surgeons had significant conflicts of interest because of [McLean's] prior testimony."

   c. Based on the findings of the PSB, McLean "was placed on Summary Suspension in May of 2012; and ultimately removed from the Department of Veterans Affairs final during the last quarter of 2014."

   d. In 2015 and 2016, McLean paid Bruce "$60,000 to appeal [McLean's] removal to the Office of Special Counsel (OSC)."

   e. Bruce "never performed on this contract."

  f.  Between 2017 and 2020, on multiple occasions, McLean expressed to Bruce his "concerns about the statute of limitations or latches terminating [McLean's] ability to file an appeal with the OSC."

  g.  Bruce "repeated stated he was not worried, because a complaint to the OSC concerning retaliation arouse in equity." Bruce "asserted that he had unlimited time to file."

  h.  When McLean "pointed out that equity's latches eventually gives way to stale evidence, [Bruce] again stated that he was not concerned."

  i.  "Concerned over whether stale evidence would trump latches; in April of 2020, [McLean obtained] a second opinion regarding [his] ability to the OSC from a Washington DC law firm that handles Title 38 cases."

  j.  "The above law firm stated that it is 'virtually' impossible to get the OSC to review a whistle blowing complaint after three years."

  k.  On May 1, 2020, Bruce unilaterally cut off all contact with McLean.

  l.  As of July 24, 2020, Bruce has neither retuned the $60,000 or McLean's file.

(**Exhibit B** at pp. 2-3.)

  15.  The Underlying Complaint originally contained five counts. (**Exhibit B** at pp. 3-6.)

  16.  Counts I and II alleged professional negligence against Bruce. (**Exhibit B** at pp. 3-4.)

  17.  Count I alleges that Bruce committed professional negligence by failing to file McLean's appeal with the Office of Special Counsel in a timely manner. (**Exhibit B** at p. 4.)

18. Count II alleges that Bruce committed professional negligence by failing to file McLean's appeal with a Merit Standard Protection Board. (**Exhibit B** at p. 4.)

19. In Counts I and II, McLean alleges that, as a result of Bruce's professional negligence, he has suffered lost wages, loss of prestige, ... can no longer practice medicine, anxiety, and insomnia." (**Exhibit B** at p. 4.)

20. Count III alleged that Bruce breached an oral contract with McLean, presumably to perform legal services for McLean. (**Exhibit B** at p. 4.)

21. Count III seeks recovery of the alleged "Contract Value ($60,000)" and "Incidental and Consequential damages." (**Exhibit B** at p. 7.)

22. Counts IV and V of the Underlying Complaint originally alleged Intentional Infliction of Emotional Distress and Defamation, respectively. (**Exhibit B** at pp. 5-6.)

23. After the filing of the Underlying Complaint, State Farm agreed to provide Bruce with a defense against the Underlying Complaint under a reservation of rights.

24. On October 13, 2021, the Federal District Court for the Western District of Missouri dismissed Counts IV and V of the Underlying Complaint. (**Exhibit D** (October 13, 2021, Order.)

25. As such, Counts IV and V are no longer part of the Underlying Complaint.

26. And, as explained below, State Farm has no duty to defend the remaining counts of the Underlying Complaint.

### COUNT I – State Farm Has No Duty To Defend Bruce Because Counts I, II, and III Do Not Describe A "Loss" As Defined By The Policy.

1-26. For Paragraphs 1-26 of Count I of State Farm's Complaint for Declaratory Judgment, State Farm incorporates by reference paragraphs 1-26 of the **Allegations Applicable To All Counts**, as if fully stated herein.

27. The insuring agreement of Coverage L of the Policy is not potentially triggered by a complaint unless the allegations against the insured describe the presence of a "**loss**."

28. Counts I, II, and III of the Underlying Complaint do not allege the presence of a **"loss"** as the term is defined by the Policy.

29. A "**loss**" requires an "accident ... which first results in **bodily injury** or **property damage** during the policy period" or "the commission of an offense which first results in **personal injury** during the policy period."

30. The allegations of Counts I, II, and III of the Underlying Complaint do not describe a **"bodily injury,"** "**property damage,"** or a **"personal injury"** as those terms are defined by the Policy.

31. As a consequence, there is no possibility or potential that Coverage L provides coverage for Counts I, II, and III, and, thus, State Farm has no duty to defend.

Wherefore, State Farm prays that this Honorable Court enter judgment in its favor on Count I of the Complaint for Declaratory Judgment, declare that the Policy provides no coverage for Underlying Complaint, and declare that State Farm does not owe Jeffrey Bruce a duty to defend him against the allegations of the Underlying Complaint.

### COUNT II – State Farm Has No Duty To Defend Bruce Because Coverage for Counts I, II, and III Is Precluded By The Policy's Professional Services Exclusion.

1-26. For Paragraphs 1-26 of Count II of State Farm's Complaint for Declaratory Judgment, State Farm incorporates by reference paragraphs 1-26 of the **Allegations Applicable To All Counts**, as if fully stated herein.

27. Even if Counts I, II, and III of the Underlying Complaint triggered the insuring agreement of Coverage L of the Policy (which they do not), the Policy's professional services exclusion would still preclude the potential or possibility of coverage.

28. According to the terms of the Policy's professional services exclusion, there is no coverage for any "**loss** arising out of any **insured** providing or failing to provide a professional service."

29. Counts I, II, and III of the Underlying Complaint all originate from, have their origins in, grow out of, or flow from Bruce's rendering or failure to render legal services as an attorney.

29. Legal services by an attorney qualify as a professional service.

30. As a consequence, the Policy's professional services exclusion precludes any potential or possibility of coverage for Counts I, II, and III of the Underlying Complaint.

Wherefore, State Farm prays that this Honorable Court enter judgment in its favor on Count II of the Complaint for Declaratory Judgment, declare that the Policy provides no coverage for the Underlying Complaint, and declare that State Farm does not owe Jeffrey Bruce a duty to defend him against the allegations of the Underlying Complaint.

### COUNT III – State Farm Has No Duty To Defend Bruce Because Coverage for Counts I, II, and III Is Precluded By The Policy's Business Pursuits Exclusion.

1-26. For Paragraphs 1-26 of Count III of State Farm's Complaint for Declaratory Judgment, State Farm incorporates by reference paragraphs 1-26 of the **Allegations Applicable To All Counts**, as if fully stated herein.

27. Even if Counts I, II, and III of the Underlying Complaint triggered the insuring agreement of Coverage L of the Policy (which they do not), the Policy's business pursuits exclusion would still preclude the potential or possibility of coverage.

28. According to the terms of the Policy's business pursuits exclusion, there is no coverage for any "**loss** arising out of … **business** pursuits of any **insured**."

29. Counts I, II, and III of the Underlying Complaint all originate from, have their origins in, grow out of, or flow from Bruce's pursuit of a "trade, profession, or occupation."

30. As a consequence, the Policy's business pursuits exclusion precludes any potential or possibility of coverage for Counts I, II, and III of the Underlying Complaint.

Wherefore, State Farm prays that this Honorable Court enter judgment in its favor on Count III of the Complaint for Declaratory Judgment, declare that the Policy provides no coverage for the Underlying Complaint, and declare that State Farm does not owe Jeffrey Bruce a duty to defend him against the allegations of the Underlying Complaint.

### COUNT IV – Coverage for Count III of the Underlying Complaint is Precluded By the Policy's Contractual Liability Exclusion.

1-26. For Paragraphs 1-26 of Count IV of State Farm's Complaint for Declaratory Judgment, State Farm incorporates by reference paragraphs 1-26 of the **Allegations Applicable To All Counts**, as if fully stated herein.

27. Even if Count III of the Underlying Complaint triggered the insuring agreement of Coverage L of the Policy (which it does not), the Policy's contractual liability exclusion would still preclude the potential or possibility of coverage.

28. According to the terms of the Policy's contractual liability exclusion, there is no coverage for "liability imposed on or assumed by any **insured** through any unwritten or written agreement."

29. Count III of the Underlying Complaint seeks a recovery due to contractual liability allegedly imposed on or assumed by Thomas through an unwritten or written agreement.

30. As a consequence, the Policy's contractual liability exclusion precludes any potential or possibility of coverage for Count III of the Underlying Complaint.

Wherefore, State Farm prays that this Honorable Court enter judgment in its favor on Count III of the Complaint for Declaratory Judgment, declare that the Policy provides no coverage for the Underlying Complaint, and declare that State Farm does not owe Jeffrey Bruce a duty to defend him against the allegations of the Underlying Complaint.

Respectively submitted,

STATE FARM FIRE AND CASUALTY COMPANY,
Plaintiff

BY: /s/ Richard W. Wiese
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Richard W. Wiese, #66634

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
701 Market Street
Peabody Plaza, Suite 1505
St. Louis, MO 63101
Telephone 314.241.2018
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: rwiese@heylroyster.com